UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 22-11185-RGS

STEPHEN J. LaBELLE

v.

MARINEMAX NORTHEAST, LLC

MEMORANDUM AND ORDER ON DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

January 17, 2024

STEARNS, D.J.

This dispute concerns an allegedly defective 2019 Azimut 66-FLY yacht that Stephen LaBelle purchased from MarineMax Northeast, LLC, in July of 2018. After being nearly unable to use the yacht for almost two years because of the defects, LaBelle brought this suit. He claims that MarineMax breached the parties' purchase and sale agreement (Count I); breached implied warranties and the implied covenant of good faith and fair dealing (Counts II and III); and engaged in unfair and deceptive business practices in violation of Mass. Gen. Laws ch. 93A and/or R.I. Gen. Laws § 6-13.1-11 (Count IV). He seeks damages, attorneys' fees, and costs, as well as a declaratory judgment that the non-disparagement clause in the purchase and sale agreement is

unenforceable (Count V).  MarineMax filed two counterclaims, alleging that it provided various services to LaBelle for which he did not pay.  It seeks recovery of damages, attorneys' fees, and costs under a breach of contract theory (Counterclaim I) or, in the alternative, quantum meruit (Counterclaim II).

MarineMax now moves for summary judgment on all counts against it and on Counterclaim II.  The court will deny the motion.

## BACKGROUND

The following facts are undisputed unless otherwise noted.  On July 25, 2018, LaBelle purchased a 2019 Azimut 66-FLY yacht (the Vessel) from MarineMax for $2,225,125.  To consummate the sale, the parties executed a purchase and sale agreement (the Contract) that same day.  *See* Aff. of Larry Russo, Jr., Ex. D (Contract) (Dkt. # 22-1) at 1-3.  The Contract states that Rhode Island law governs, provides that the Vessel was sold "AS IS," and expressly disclaims all warranties.  *Id.* at 3.  The Contract also contains a non-disparagement clause, which states that LaBelle would not make disparaging comments about MarineMax in the media, on the internet, or in "any source likely to result in publication or computerized access." *Id.*

After he took possession of the Vessel, LaBelle noticed problems.  Some of the defects were cosmetic, such as issues with the temperature of the

Vessel's wine cooler and the port curtain being "hard to roll up an[d] down." LaBelle's Opp'n to Def.'s Mot. for Summ. J. (Pl.'s Opp'n) (Dkt. # 26), Ex. 1 at 33, 38. Others were structural, including intermittent engine stalls, leaks with the trim tabs, and malfunctioning bow thrusters. *Id.*, Ex. 1 at 12, 33, 38.

The fact that the Vessel needed repairs is not legitimately in dispute,[1] but the parties disagree sharply about the extent to which the repairs prevented LaBelle from using the Vessel. According to LaBelle, he was only able to use the Vessel for 45 hours during the first two years that he owned it because of the need for repairs. Pl.'s Opp'n to Def.'s L.R. 56.1 Statement of Undisputed Material Facts (Dkt. # 27) ¶ 82. He claims that MarineMax was unreasonably slow in repairing the Vessel and that it consistently misrepresented when the repairs would be complete. *Id.* ¶¶ 69-80. MarineMax counters that the defects were "largely cosmetic and not impacting the operation or structural integrity of the Vessel" and that, "[o]utside of having to perform various onsite services and/or repairs,"

---

[1] Although MarineMax now denies that there were problems with the Vessel, the fact that it repeatedly agreed to repair the Vessel demonstrates that it acknowledged that issues existed. *E.g.*, Pl.'s Opp'n, Ex. 1 at 18-19, 27-31, 33, 76 (LaBelle's emails with MarineMax representatives shortly after he purchased the Vessel complaining of defects); Defs.' Corrected Mot. for Summ. J. (Mot. for Summ. J.) (Dkt. # 22) at 9 (MarineMax conceding that it performed "services and repairs" on the Vessel).

LaBelle was able to use the Vessel. L.R. 56.1 Statement of Undisputed Material Facts (Dkt. # 24) ¶ 21, 25.

In the summer of 2020, while LaBelle's Vessel was docked at one of MarineMax's marinas, LaBelle hung banners on the Vessel with negative comments about MarineMax. Mot. for Summ. J. at 16. MarineMax's counsel sent LaBelle a letter, informing him that he had breached the non-disparagement clause of the Contract and demanding that he cease doing so. Pl.'s Opp'n, Ex. 2 at 1. Six days later, on July 24, 2020, MarineMax placed a lien on the Vessel, claiming that LaBelle had an outstanding balance of $10,925.63 for non-warranty services performed on the Vessel. *Id.* at 2.

## DISCUSSION

Summary judgment is warranted where the movant demonstrates that the record, "construed in the light most flattering to the nonmovant, 'presents no genuine issue as to any material fact and reflects the movant's entitlement to judgment as a matter of law.'" *Lawless v. Steward Health Care Sys.*, 894 F.3d 9, 20-21 (1st Cir. 2018), quoting *McKenney v. Mangino*, 873 F.3d 75, 80 (1st Cir. 2017). A dispute is "genuine" if there is "'sufficient evidence supporting the claimed factual dispute' to require a choice between 'the parties' differing versions of the truth at trial.'" *Garside v. Osco Drug,*

*Inc.*, 895 F.2d 46, 48 (1st Cir. 1990), quoting *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975).

MarineMax bears the burden of showing that there are no genuine disputes of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). It discharges this burden only if it shows that LaBelle has failed "to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial." *Id.* at 322. The burden then shifts to LaBelle to adduce facts that "find adequate support in the record . . . showing that a trier of fact reasonably could find in his favor." *Murray v. Warren Pumps, LLC*, 821 F.3d 77, 83 (1st Cir. 2016).

**Choice of Law**

A threshold issue is whether Massachusetts or Rhode Island law governs LaBelle's claims. Massachusetts choice of law rules guide the analysis. *See McKee v. Cosby*, 874 F.3d 54, 59 (1st Cir. 2017). A choice-of-law provision in a contract is enforceable unless contrary to public policy. *See Hodas v. Morin*, 442 Mass. 544, 549-550 (2004). The court engages in a "two-tiered analysis" to assess whether the provision is contrary to public policy, asking (1) whether Rhode Island has a "substantial relationship" to the transaction, and (2) whether applying Rhode Island law "would be contrary to a fundamental policy of" Massachusetts. *Id.* at 550.

5

The court will apply Massachusetts law to LaBelle's claims. Applying Rhode Island law to resolve Count II would be contrary to a fundamental policy of Massachusetts because waivers of the implied warranty of merchantability in contracts for goods and services are unenforceable under Massachusetts law but are permitted under Rhode Island law. *Compare* Mass. Gen. Laws ch. 106 § 2-316A(2), *with* R.I. Gen. Laws § 6A-2-329(2)(b). Because Counts I, III, and IV sound predominately in contract, the court will also apply Massachusetts law to these claims.[2] *See Crellin Techs., Inc. v. Equipmentlease Corp.*, 18 F.3d 1, 11 (1st Cir. 1994); *cf. N.E. Data Sys., Inc. v. McDonnell Douglas Comp. Sys. Co.*, 986 F.2d 607, 609-610 (1st Cir. 1993) (Chapter 93A claim sounding in contract could not proceed because California law applied to other contractual claims).

**Counts I-III – Breach of Contract, Implied Warranties, and Covenant of Good Faith and Fair Dealing**

To show that MarineMax breached the Contract, LaBelle must show that (1) the parties had a valid contract; (2) MarineMax breached the contract; and (3) LaBelle sustained damages because of the breach. *Brooks*

---

[2] Claims in the same dispute arising from the same substantive law are to be decided according to the law of one state. *See Crellin Techs., Inc. v. Equipmentlease Corp.*, 18 F.3d 1, 11 (1st Cir. 1994). Depecage, the principle that "different issues in a single case . . . may be decided according to the substantive law of different states," is applicable only where the claims arise under different substantive bodies of law. *See Putman Res. v. Pateman*, 958 F.2d 448, 465 (1st Cir. 1992).

*v. AIG SunAmerica Life Assurance Co.*, 480 F.3d 579, 586 (1st Cir. 2007). For his breach of warranties claim, LaBelle must prove that (1) MarineMax sold the Vessel; (2) the alleged defects existed

> at the time the product left [MarineMax's] hands so that it was not reasonably suitable for the ordinary uses for which goods of that kind are sold; (3) . . . at the time of his injury, [LaBelle] was using the product in a manner that [MarineMax] intended or that could reasonably have been foreseen; and (4) . . . the defect or unreasonably defective condition . . . was a legal cause of [LaBelle's] injury.

*Lally v. Volkswagen Aktiengesellschaft*, 45 Mass. App. Ct. 317, 337 (1998) (sixth alteration in original). Establishing a violation of the implied covenant requires proof of "at least bad faith conduct." *Sonoran Scanners, Inc. v. Perkinelmer, Inc.*, 585 F.3d 535, 541 (1st Cir. 2009).

The facts underlying Counts I-III are the same. LaBelle alleges that MarineMax breached the Contract and implied warranties by delivering a defective boat and failing to cure the defects, so he was unable to use it. MarineMax argues that LaBelle's claims fail as a matter of law because it disclaimed all warranties, the Contract specified that the Vessel was sold as is, LaBelle has provided no inspection report or expert testimony that the Vessel was defective, and he has no evidence that he suffered damages.

As noted, any attempt to disclaim the implied warranties of merchantability or fitness for a particular purpose in a sale of consumer

7

goods is unenforceable in Massachusetts. Mass. Gen. Laws ch. 106 § 2-316A(2); *see also Philips v. Northrop & Johnson*, 106 F.3d 383, 383 (1st Cir. 1997). The Vessel is a consumer good, so the express disclaimers are void.

Further, LaBelle is not required to present expert testimony to prove that MarineMax breached the Contract or implied warranties.[3] The defects are not technically complex; they require the jury to make factual findings about, for example, whether the engine was in fact stalling and, if so, whether this rendered the Vessel unsuitable for ordinary use. *See Lally*, 45 Mass. App. Ct. at 337. The court is comfortable that this can be determined "from common sense, common experience, and the [trier of fact's] own perceptions or simple logic."[4] *United States v. Zajanckauskas*, 441 F.3d 32, 39 (1st Cir.

---

[3] The cases cited by MarineMax on this point are inapposite because they involve plaintiffs advancing tort-based, not contract-based, theories of liability. A tort-based breach of warranty claim requires proof of a causal link between the breach and the plaintiff's injury, which expert testimony is often required to prove. *See Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 89 n.1 (1st Cir. 1993). But a claim seeking to recover economic loss premised on the parties' contract, such as LaBelle's, is contract-based and does not require proof of causation. *See Bay State-Spray Spray & Provincetown S.S., Inc. v. Caterpillar Tractor Co.*, 404 Mass. 103, 107 (1989).

[4] The fact that LaBelle at one point stated an intention to rely on expert testimony to prove his claims and has subsequently elected to forego an expert is of no moment. The court never expressed any agreement with LaBelle's statement that such an expert "could be of substantial assistance," *see* Notice of Pl.'s Req. for Expert Disc. (Dkt. # 11) at 2, nor did it conclude that the proffered expert testimony would be admissible under Rule 702.

2006) (alteration in original).  Nor is LaBelle required to produce an inspection or survey report identifying the defects at the time of delivery because the fact that there were defects is not legitimately in dispute.

The core dispute for Counts I-III is instead whether the Vessel was rendered unsuitable for use and whether this caused LaBelle damages.  The evidence MarineMax offers on this point is an affidavit from Larry Russo, Jr.  *See* Aff. of Larry Russo, Jr. (Dkt. # 24-1).  But Russo's affidavit does not establish that LaBelle was able to use his Vessel regularly.  Indeed, the affidavit represents that LaBelle was not able to fully use the Vessel until "mid-summer 2020," two years after he purchased it.  *Id.* ¶ 14.  This is insufficient to support summary judgment.[5]

**Count IV – Chapter 93A**

To prevail on his Chapter 93A claim, LaBelle must show "1) that the defendant . . . committed an unfair or deceptive act or practice; . . . 2) a loss of money or property suffered as a result; and 3) a causal connection between the loss suffered and the defendant's unfair or deceptive method, act, or practice." *Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.*, 469 Mass. 813,

---

[5] In reply, MarineMax faults LaBelle for relying "only [on] his self-serving affidavit" in opposing summary judgment.  Def.'s Reply in Support of its Mot. for Summ. J. (Reply) (Dkt. # 31) at 1.  But the burden does not shift to LaBelle until MarineMax carries its burden of showing that there are no genuine disputes of material fact. *See Murray*, 821 F.3d at 83.

820 (2014) (footnote omitted). A breach of an implied warranty constitutes a *per se* violation of Chapter 93A § 9. *See Maillet v. ATF-Davidson Co., Inc.*, 407 Mass. 185, 193 (1990). Having concluded that summary judgment is not warranted on LaBelle's breach of implied warranties claim, summary judgment is also not warranted on the Chapter 93A claim.[6]

**Count V – Declaratory Judgment**

LaBelle seeks a declaration that the non-disparagement clause in the Contract is void under the Consumer Review Fairness Act, 15 U.S.C. § 45b (CRFA). The CRFA voids any form contractual provision that prohibits, restricts, or impedes a consumer from making "written, oral, or pictorial review" of a company. 15 U.S.C. § 45b(a), (b). MarineMax argues that summary judgment is warranted because (1) the CRFA does not create a private right of action and (2) the CRFA does not prohibit a company from prohibiting a consumer from publishing material that is "clearly false or misleading." Mot. for Summ. J. at 15. Both arguments miss the mark.

LaBelle seeks declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, not the CRFA. The nature of the underlying dispute creates a basis for federal court jurisdiction, so LaBelle may rely on the Declaratory

---

[6] The court concludes as much without reaching LaBelle's other grounds supporting his Chapter 93A claim.

Judgment Act to seek a declaration that the non-disparagement clause is void. *See Narragansett Indian Tribe v. Rhode Island Dep't of Transp.*, 903 F.3d 26, 30-31 (1st Cir. 2018). Second, MarineMax argues only that it was permitted to demand that LaBelle remove the banners because they were clearly false or misleading. But LaBelle seeks a declaration that the non-disparagement clause, not MarineMax's conduct in enforcing the clause, is void.[7] MarineMax has advanced no argument that the clause itself is valid.

**Counterclaim II – Quantum Meruit**

To recover in quantum meruit, MarineMax must show "(1) that it conferred a measurable benefit upon [LaBelle]; (2) that [it] reasonably expected compensation from [LaBelle]; and (3) that [LaBelle] accepted the benefit with the knowledge, actual or chargeable, of [MarineMax's] reasonable expectation." *Finard & Co. v. SITT Asset Mgmt.*, 79 Mass. App. Ct. 226, 229 (2011). MarineMax seeks compensation of $31,968.56 for "two seasons worth of winterization and storage services, paint, spring

---

[7] The fact that, by its terms, the non-disparagement clause prevents LaBelle only from posting negative reviews online or on a forum likely to be publicized online does not save MarineMax. Although not framed this way, MarineMax appears to be arguing that LaBelle lacks standing to seek declaratory relief because he posted no negative reviews online. But after he hung the banners, MarineMax sent LaBelle a letter stating that he was in breach of the non-disparagement clause. This is sufficient to confer standing to challenge the facial validity of the clause.

11

commissioning, and 2021 summer storage." Mot. for Summ. J. at 16. LaBelle does not contend that he paid for these services but instead claims that (1) MarineMax did not confer a benefit on him because it only stored the Vessel while it was performing repairs, the need for which only existed because the Vessel was defective, and (2) he did not accept some of the parts and services for which he was charged. Pl.'s Opp'n at 19.

MarineMax has failed to show that it is owed $31,968.56. MarineMax first points to an invoice for $9,500 for 2019 winterization services signed by LaBelle. Russo Aff., Ex. F. LaBelle does not credibly dispute that he accepted these services, and the signed invoice shows that he knew MarineMax expected compensation. MarineMax also identifies emails from its counsel claiming that LaBelle owed MarineMax approximately $26,000. *Id.*, Ex. G. These emails do not show what charges were included in this total, so the court cannot assess what services MarineMax provided and whether LaBelle reasonably should have expected to pay for them. Accordingly, the court will treat the fact that LaBelle owes MarineMax $9,500 for 2019 winterization services as established pursuant to Fed. R. Civ. P. 56(g) but will deny MarineMax's motion in order to permit it to present additional evidence on Counterclaim II at trial.

A final note. In reply, MarineMax represents that LaBelle "has not produced a single piece of paper in response to a discovery request." Reply at 2. This is the first time MarineMax has raised this issue to the court.[8] As the plaintiff, LaBelle of course has an obligation to participate fully in this litigation, including by producing documents in response to MarineMax's requests. The court is concerned that LaBelle has shirked this obligation entirely, and it reminds LaBelle that at trial, he may not rely on any documents that he failed to provide MarineMax during discovery.

## ORDER

For the foregoing reasons, MarineMax's motion for summary judgment is <u>DENIED</u>.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

---

[8] The proper remedy would have been for MarineMax to move to compel LaBelle to produce documents during fact discovery, not to complain about his failure to do so at summary judgment. This is particularly true here, because MarineMax knew as of at least August 17, 2023, that LaBelle likely had responsive documents in his possession, custody, and control but had not produced them. See Reply, Ex. 2 at 76.