UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | )  |  |
|---|---|---|
| STEPHEN J. LABELLE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 22-11185-RGS |
| | ) | |
| MARINEMAX NORTHEAST, LLC , | ) | |
| Defendant. | ) | |
| | ) | |

# DEFENDANT'S TRIAL MEMORANDUM

In accordance with the Court's Order Setting Civil Case for Jury Trial dated January 18, 2024, the Defendant and Plaintiff-in-Counterclaim, MarineMax Northeast, LLC ("MarineMax"), hereby submits the following trial memorandum addressing foreseeable disputes concerning issues of law and the admissibility of evidence.

## Summary of the Case

The allegations by Plaintiff, Stephen J. LaBelle ("LaBelle") concern a 2019 Azimut 66-FLY (the "Vessel"), a new vessel purchased from MarineMax in July 2018. LaBelle is a sophisticated buyer and former customer of MarineMax. The Vessel he purchased in 2018 was his fourth boat transaction through MarineMax in just over two (2) years. He claims his Vessel was riddled with so-called "defects," that they included parts and/or systems that rendered the Vessel unworkable and/or dangerous, and that as a result, he was prevented from using it for the majority of the time he owned it – nearly four (4) years. He alleges that it did not conform to industry standards of trade, and that MarineMax was ill-equipped to properly repair the items at issue. MarineMax disputes LaBelle's claims. LaBelle has no inspection or survey reports from when he

1

purchased the Vessel or from any time throughout his ownership of the Vessel to substantiate the alleged defects, and he has no expert.

In addition, LaBelle claims he was somehow denied the ability to post "honest but negative reviews about MarineMax" and that he wants to be free to do that. He claims his lawyer was sent a letter by MarineMax that he characterizes as threatening which relied on the non-disparagement clause in the purchase and sale agreement, and that MarineMax uses such letters to prevent the public from making "honest but negative reviews about MarineMax." But, make no mistake, the gravamen of LaBelle's complaint is about the warranty items associated with the boat he purchased. LaBelle brought this action four (4) years after his purchase, claiming he is entitled to, *inter alia*, multiple damages for breach of implied warranties and violation of Chapter 93A.

The evidence will show that the items about which LaBelle complains had no impact on the operational or structural integrity of the Vessel, did not render the Vessel unworkable or dangerous, and are not actionable "defects" justifying monetary recovery. The evidence will further show that LaBelle's claims are precluded by, among other things, his own inequitable conduct; the damage limitation in the Purchase and Sale Agreement that he voluntarily, and knowingly, signed; the statute of limitations; and, his waiver of implied warranties by his pre-contract examinations, including a sea trial of his Vessel.

On its counterclaim, this Court has awarded MarineMax $9,500 in quantum meruit for winterization services that MarineMax invoiced to LaBelle, and that LaBelle accepted and benefited from, without paying MarineMax its reasonable compensation. (*See* Memorandum and Order on Defendant's Motion for Summary Judgment, dated January 17, 2024, p.12, ECF 32). The Court has also allowed MarineMax to present additional evidence on the reasonable value of other services it provided to LaBelle, and that LaBelle willingly accepted, and benefited from without

paying for. The evidence will show that this additional amount is approximately $22,468.56 for winterization, painting, spring commissioning, and 2021 summer storage.

**Foreseeable Legal Issues**

I. <u>Whether LaBelle's Claim for Breach of Implied Warranties is Barred by the Statute of Limitations</u>

Before adjudicating the merits of LaBelle's claim for breach of implied warranties, this Court must determine whether or not it is barred by the statute of limitations.

"The appropriate statute of limitations to apply to a breach of warranty claim under art. 2 of the Uniform Commercial Code is found by determining the *nature* of that particular breach of warranty claim." *Fine v. Huygens, DiMella, Shaffer & Assocs.*, 57 Mass. App. Ct. 397, 400 (2003) (emphasis added) (citing *Bay State–Spray & Provincetown S.S., Inc. v. Caterpillar Tractor Co.*, 404 Mass. 103, 110 (1989)). "[B]reach of this implied warranty provides a cause of action in tort where the harm is a physical injury to person or *property*." *Id.* at 400 *(*emphasis added) (citing *Commonwealth v. Johnson Insulation,* 425 Mass. 650, 653 (1997)). On the other hand, where the harm entails "an economic loss of value in the product itself," the nature of the breach sounds in contract. *Id.*

An implied warranty claim sounding in tort is subject to a three-year statute of limitations under the Uniform Commercial Code, which begins to run from the date of damage to the property. Mass. Gen. Laws Ann. ch. 106, § 2-318 ("All actions under this section shall be commenced within three years next after the date the injury and damage occurs."). An implied warranty claim sounding in contract, meaning it is based on loss in economic value, is subject to a four-year statute of limitations, which runs from the date of breach. Mass. Gen. Laws Ann. ch. 106, § 2-725. Applying these rules, in *Fine v. Huygens, DiMella, Shaffer & Assocs.*, 57 Mass. App. Ct. 397, 400 (2003), the court held that the three-year statute of limitations for tort claims, not the four-year one

3

for contract claims, governed the implied warranty claim of condominium owners against suppliers of exterior wall panels, where the owners claimed that defects and deficiencies in the design of the walls caused damage to their units.

As in *Fine*, here, too, the basis for LaBelle's breach of implied warranty claim is that MarineMax sold and delivered to him a boat in an allegedly defective and damaged condition, unfit for his personal use. (Complaint, ¶ 60 – "While the non-exhaustive list of defects is described in more detail above, MarineMax delivered the Azimut in an unfit, unmarketable condition…The Azimut…was unfit for use as a boat for personal use..."). LaBelle's pleading thus makes it plain that his claim sounds in tort, as it is grounded in damage to personal property he purchased.

As a claim sounding in tort, LaBelle's implied warranty claim is barred by the three-year statute of limitations. It is undisputed that the boat was delivered to LaBelle on or about July 25, 2018, which is the date of purchase. (LaBelle's Responses to MarineMax's Statement of Undisputed Facts, ¶¶ 2, 13; Complaint, ¶¶ 17-18; Purchase and Sale Agreement, Estimated Delivery Date July 25, 2018). It is further undisputed that LaBelle claims the boat was defective at the date of delivery. LaBelle alleges that "MarineMax…delivered the Azimut in an unfit, unmerchantable form" (Complaint, ¶ 19) and that "MarineMax was unable to get the boat into 'ship shape' over the remainder of that summer and fall of 2018." (Complaint, ¶ 20). However, despite the boat being allegedly damaged around the time of delivery in July 2018, and despite LaBelle being aware of such alleged damage at that time, LaBelle did not file his Complaint until July 22, 2022, a year after the three-year statute of limitations had expired.

Accordingly, his claim is time barred pursuant to Mass. Gen. Laws Ann. ch. 106, § 2-318, and must be dismissed as a matter of law.

II.     <u>Whether LaBelle's Claim for Breach of the Implied Warranties of Merchantability and Fitness for a Particular Purpose is Waived by his Pre-Contract Inspection</u>

Implied warranties may be waived under the Uniform Commercial Code where a buyer examines the good before entering into a purchase agreement, and where such examination would reveal defects normally covered by the implied warranty. Specifically, ch. 106, § 2-316 (3)(b) of the Uniform Commercial Code provides that "**when the buyer before entering into the contract has examined the goods** or the sample or model as fully as he desired or has refused to examine the goods **there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him**." Mass. Gen. Laws Ann. ch. 106, § 2-316 (3)(b) (emphasis added); *Datatrend, Inc. v. Jabil Cir., Inc.*, 3 F. Supp. 2d 66, 74, n.6 (D. Mass. 1998) (recognizing issue for trial on whether "the warranty of merchantability [was] waived as to any particular defect pursuant to Mass.Gen.Laws ch. 106, § 2–316(3)(b)").

Although ch. 106, § 2-316A prohibits certain exclusions or waivers of implied warranties in the consumer context, the prohibition does not extend to waiver on account of a consumer's prior examination. Rather, ch. 106, § 2-316A(2) prohibits a seller from inserting contractual language disclaiming implied warranties in the sale of consumer goods. The statute does prohibit waiver of the implied warranty where the consumer is the one who conducts a pre-contract examination, which, under usual circumstances, would have revealed the presence of defects.

Here, the evidence will show that LaBelle conducted examinations and a sea trial of the boat before he executed the Purchase and Sale Agreement on July 25, 2018. The evidence will also show that LaBelle's pre-contract examination ought to have revealed any issues with the boat. Indeed, at no time in this action has LaBelle claimed that any of the alleged defects in the boat were latent. To the contrary, the evidence will show that LaBelle was aware of any so-called "defects" in the boat prior to purchasing it, and yet, he still went ahead with the purchase.

Accordingly, based on his pre-contract examinations, LaBelle has waived any implied warranties and his claim for their breach must be dismissed.

III.  Whether the Limitation on Damages in the Purchase and Sale Agreement is Enforceable

LaBelle's alleged damages for contract breach, breach of implied warranties, and breach of the implied warranty of good faith and fair dealing (Counts I-III) are subject to a contractual provision limiting recovery. The Purchase and Sale Agreement provides, in bold, capitalized letters, that "**Seller disclaims and shall not be liable for consequential, incidental, or indirect damages of any nature**." (Purchase and Sale Agreement, Additional Terms and Conditions, ¶ 2) (emphasis added). "Consequential damages are those that cannot be reasonably prevented and arise naturally from the breach or are reasonably contemplated by the parties, including loss of prospective profits, and incidental damages permit recovery of reasonable expenses incurred in handling the defective goods." *D.W. Clark, Inc. v. Solectria Renewables, LLC*, 2018 WL 6515414, at *6 (Mass.Super.Ct. Oct. 15, 2018) (citing *Delano Growers' Cooperative Winery v. Supreme Wine Co.*, 393 Mass. 666, 680 (1985); *Matsushita Elec. Corp. of America v. Sonus Corp.*, 362 Mass. 246, 263-264 (1972)).

While the Uniform Commercial Code provides for a buyer's recovery of consequential and incidental damages (Mass. Gen. Laws Ann. ch. 106, § 2-715), the Code also recognizes that an "**agreement may** provide for remedies in addition to or in substitution for those provided in this Article and may **limit** or alter the **measure of damages recoverable under this Article**. Mass. Gen. Laws Ann. ch. 106, § 2-719 (emphasis added). This includes the exclusion of consequential damages by contract, as long as the exclusion is not unconscionable. Mass. Gen. Laws Ann. ch. 106, § 2-719 (3) ("Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable."). Further, "**[l]imitation of consequential damages for injury to**

**the person in the case of consumer goods is prima facie unconscionable *but limitation of damages where the loss is commercial is not*.**" Mass. Gen. Laws Ann. ch. 106, § 2-719 (3) (emphasis added). In reliance on this statute, courts have enforced contractual damage limitations in the consumer context where there is no personal injury and the loss is purely commercial. *Leach v. Honeywell Int'l Inc.*, 2014 WL 12585799, at *7 (D. Mass. Nov. 17, 2014) (court held in consumer good case, citing Mass. Gen. Laws ch. 106, § 2-719, that "[l]imitations on consequential damages are enforceable in Massachusetts."); *Ofer Nemirovsky v. Daikin North America*, LLC, 2019 WL 13146491, at *2 (Mass.Super.Ct. Apr. 30, 2019) ("[P]laintiff's damages are severely limited by the language in the DAA maintenance agreement, which bars 'incidental, consequential, or special damages.'").

Accordingly, the damage limitation clause is not prima facie unconscionable, meaning that it cannot be *per se* invalidated without an analysis of the factors governing unconscionability.

Massachusetts courts invalidate contractual clauses as unconscionable if they are *both* procedurally and substantively unconscionable. *Barrasso v. Macy's Retail Holdings, Inc.*, 2016 WL 1449567, at *5 (D. Mass. Apr. 12, 2016) (citing *Machado v. System4 LLC*, 471 Mass. 204, 218 (2015)). Procedural unconscionability pertains to the circumstances surrounding the formation of the contract, including whether or not the aggrieved party seeking invalidation had a meaningful choice and was subject to unfair surprise. *Id.* Contracts of adhesion are not procedurally unconscionable, unless they are shown to offend public policy or be unfair under the particular circumstances. *Barrasso*, 2016 WL 1449567, at *6. The fact that a party to a contract did not fully read or understand the document does not make the agreement unconscionable. *Id.* (citing *McInnes v. LPL Fin., LLC*, 466 Mass. 256, 266 (2013). "Absent fraud, an individual who signs a written agreement is bound by its terms whether he reads and understands them or not. *Barrasso*, 2016

WL 1449567, at *6 (citing *Bose Corp. v. Ejaz*, 732 F.3d 17, 22 (1st Cir. 2013); quoting *Awuah v. Coverall N. Am, Inc.*, 703 F.3d 36, 44 (1st Cir. 2012)).

Substantive unconscionability pertains to the terms of the contract itself and whether or not they are oppressive to one party. *Barrasso v. Macy's Retail Holdings, Inc.*, 2016 WL 1449567, at *5. It may exist "when a contract is so one-sided as to be oppressive." *Miller v. Kopelman & Paige, P.C.*, 2008 WL 11388634, at *6 (D. Mass. Mar. 31, 2008) (citing *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 17 (1st Cir. 1999)). For instance, gross disparity in consideration is strong evidence of unconscionability. *Miller*, 2008 WL 11388634, at *6 (citing *Waters v. Min, Ltd.*, 412 Mass. 64, 68 (1992)).

Per the foregoing authorities, there is a foreseeable legal question as to the enforceability of the contractual damage limitation provision in the Purchase and Sale Agreement. For such a provision to be determined unenforceable on grounds of unconscionability, it must be determined that the provision is both procedurally and substantively unconscionable.

IV.  Whether Contract or Implied Warranty Breaches are a *Per Se* Violation of Chapter 93A

"To rise to the level of an 'unfair' act or practice, [a] defendant's conduct must generally be of an egregious, non-negligent nature." *Louis v. Saferent Sols., LLC*, 2023 WL 4766192, at *14 (D. Mass. July 26, 2023); *Walsh v. TelTech Sys., Inc.*, 821 F.3d 155, 160 (1st Cir. 2016) (same) (citing *Baker v. Goldman, Sachs & Co.*, 771 F.3d 37, 51 (1st Cir.2014)). Neither simple negligence nor breach of contract is alone sufficient to make out a violation of Chapter 93A. *Conley v. Roseland Residential Trust*, 442 F. Supp. 3d 443, 457 (D. Mass. 2020) ("[s]imple negligence does not ordinarily implicate chapter 93A.") (citing *Marram v. Kobrick Offshore Fund, Ltd.*, 442 Mass. 43, 62 (2004); *Baker v. Goldman, Sachs & Co.*, 771 F.3d 37, 51 (1st Cir. 2014)); *Performance Indicator, LLC v. Once Innovations, Inc.*, 56 F. Supp. 3d 99, 103 (D. Mass. 2014) (, "[a] breach of

contract alone is insufficient to make out a violation of Chapter 93A unless it rises to the level of commercial extortion or a similar degree of culpable conduct.") (citing *Commercial Union Ins. Co. v. Seven Provinces Ins. Co., Ltd.*, 217 F.3d 33, 40 (1st Cir.2000)). Rather, for MarineMax to be liable under Chapter 93A, LaBelle must show that its conduct, *other* than any breach itself, was "extreme or egregious." *Conley*, 442 F. Supp. at 457; *Madan v. Royal Indem. Co.*, 26 Mass. App. Ct. 756, 763 (1989) ("in order to show a violation of c. 93A, the plaintiff must show unfair or deceptive acts or practices, other than the breach.").

Further, "neither the Massachusetts legislature nor the Supreme Judicial Court has gone so far as to find that all breaches of warranties are inherently deceptive or unfair." *Sharp v. Hylas Yachts, LLC*, 872 F.3d 31, 52 (1st Cir. 2017); *Arbella Mut. Ins. Co. v. Field Controls, L.L.C.*, 2019 WL 1489877, at *7 (D. Mass. Apr. 4, 2019) (same). *Maillet v. ATF-Davidson Co.*, 407 Mass. 185, 193 (1990) did not hold that a breach of an implied warranty is a *per se* violation of Chapter 93A. Instead, the court in that case only held that it is "generally," a violation. *Id.* at 193. As with every Chapter 93A claim, for a violation to be established, "the relevant conduct is the entirety of defendants' actions, not each action viewed in isolation." *Zielinski v. Citizens Bank, N.A.*, 552 F. Supp. 3d 60, 72 (D. Mass. 2021) (citing *Hannigan v. Bank of America*, N.A., 48 F.Supp.3d 135, 142 (D. Mass. 2014)). Where the totality of conduct, other than the breach itself, rises to the level of egregiousness, "commercial extortion or a similar degree of culpable conduct," (see *Performance.*, 56 F. Supp. 3d at 103), then a defendant may be held liable under the statute.

Accordingly, per the above-cited authorities, were any finding of breach to be made as to LaBelle's contract, implied covenant, or implied warranty claims (Counts I-III), this does not, in itself, establish a violation of Chapter 93A.

9

V.     Whether LaBelle's Claim for Declaratory Relief is Ripe for Judicial Review

LaBelle seeks a declaration that the non-disparagement provision in the Purchase and Sale Agreement is void. Before adjudicating his claim, this Court must consider the threshold issue as to whether or not it is ripe for judicial review.

"The basic rationale of the ripeness inquiry is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements in violation of Article III's case or controversy requirement." *Lab. Rels. Div. of Constr. Indus. of Massachusetts, Inc. v. Healey*, 844 F.3d 318, 326 (1st Cir. 2016) (citing *Roman Catholic Bishop of Springfield v. City of Springfield*, 724 F.3d 78, 89 (1st Cir. 2013); *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)). "As the Supreme Court has put it, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (citing *MedImmune, Inc. v. Genentech*, Inc., 549 U.S. 118, 127 (2007); quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273, (1941)).

"In line with these principles, a claim is ripe only if the party bringing suit can show *both* that the issues raised are fit for judicial decision at the time the suit is filed and that the party bringing suit will suffer hardship if court consideration is withheld." *Healey*, 844 F.3d at 326 (emphasis added) (citing *McInnis–Misenor v. Me. Med. Ctr.*, 319 F.3d 63, 70 (1st Cir. 2003); quoting *Abbott Labs.*, 387 U.S. at 149). "In considering the fitness prong of the ripeness inquiry, [courts] have emphasized that a claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* (citing *City of Fall River, Mass. v. FERC*, 507 F.3d 1, 6 (1st Cir. 2007); quoting *Texas v. United States*, 523 U.S. 296,

300 (1998)). "In a similar vein,…[t]he conditional nature of the claims strongly counsels against a finding of hardship." *Id.* (citing McInnis–Misenor, 319 F.3d at 73).

Here, Plaintiff's claim is premised on his "wishes to be free to provide the public with his honest opinions and feedback concerning his experiences with MarineMax." (*See* Complaint, ¶ 107). The evidence will show that LaBelle never made any attempt to post online reviews. Instead, as the evidence will show, LaBelle considered it cost prohibitive to wage an online campaign against MarineMax. Further, there is no evidence that MarineMax ever prevented LaBelle from posting about his experience with the Azimut purchase online.

As such, neither the fitness nor hardship prongs of the ripeness test are met. As to fitness, LaBelle posting reviews online is a contingent future event, "that may not occur as anticipated, or indeed may not occur at all," (*Healey*, 844 F.3d at 326), depending on whether or not LaBelle will bear the cost. Similarly, under the hardship prong, there is no direct or immediate harm to LaBelle (and he has not alleged any). The harm is rather "wholly contingent" (*id.* at 331) on the consequences of LaBelle actually posting reviews online and MarineMax penalizing him or attempting to prevent him from doing it. Were this Court to decide such a claim, it would be rendering an impermissible advisory opinion in light of LaBelle's "wishes to be free." Under these circumstances, courts have dismissed claims for lack of ripeness. *McInnis-Misenor*, 319 F.3d at 72 (1st Cir. 2003) (dismissing claim where "threatened injury is contingent on several events which may or may not happen"); *Healey*, 844 F.3d at 329-30 (claim based on possibility of action being taken at some point against employer under sick leave statute, is not ripe).

Accordingly, here too, LaBelle's claim for declaratory relief is not ripe for adjudication and should be dismissed.

**Evidentiary Issues**

MarineMax has filed six (6) motions in limine seeking to exclude evidence and/or testimony by LaBelle on a number of subjects. In large part, the motions are based on a lack of disclosure being made during the discovery, or where the purported testimony is wholly unsupported and/or contains hearsay, and where the danger of unfair prejudice outweighs its probative value. MarineMax submits that the motions speak for themselves and can be taken up in due course in advance of trial, and do not present complicated issues of law. However, one such motion concerns whether LaBelle, *himself*, can testify to what *he* considers a "defect" that he will allege rendered his vessel unusable or unsafe, that did not conform to standards of trade, and as a result, he was prevented from using it.

Here, LaBelle *himself* is not qualified to testify that an item is a "defect" that impacted the usability or safety of the vessel or that did not conform to industry practice or standards of trade. He needs an expert on those subjects, and he has none. LaBelle will call systems unworkable or dangerous, but that cannot be enough where the evidence will show that the issues complained of by LaBelle did not, in fact, render the vessel unusable or unsafe. Expert testimony is necessary where the understanding of a field requires "specialized knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) (holding that *Daubert* gatekeeping obligation applies not only to scientific testimony, but to all "technical" or "other specialized" knowledge, pursuant to Rule 702). Courts in the First Circuit recognize that actions involving allegations of defects in a boat's manufacture implicate special knowledge as to engineering and design, thus requiring expert testimony. *Correa v. Cruisers, a Div. of KCS Int'l, Inc.*, 298 F.3d 13 (1st Cir. 2002) (in boat purchaser's breach of warranty action, licensed and trained mechanical engineer qualified to testify as expert on boat's engines under Rule 702); *Sullivan v. Young Bros. & Co.*, 91 F.3d 242 (1st Cir.

1996) (court considered expert testimony as to allegedly defective components in boat's manufacture in action against boat builder for negligence and breach of implied and express warranties); *Pace v. Ins. Co. of N. Am.*, 838 F.2d 572, 573 (1st Cir. 1988) (considering expert testimony as to defects in commercial fishing vessel design). Further, "[t]he First Circuit has explained that the presence of a defect typically cannot be inferred in the absence of expert testimony." *Vigilant Ins. Co. v. Energy Sav. Prod., Ltd.*, 2017 WL 1682533, at *3 (D. Mass. May 1, 2017) (citing *King v. Pierce Mfg., Inc.*, 608 Fed.Appx. 18, 20 (1st Cir. 2015)); *Massachusetts Prop. Ins. Underwriting Ass'n v. LG Elecs. U.S.A., Inc.*, 902 F. Supp. 2d 173, 176 (D. Mass. 2012) (same). This is because when it comes to proving that a good is defective, expert testimony is necessary "to mitigate against jury conjecture and surmise regarding the cause of the injuries at issue and the relevant standard of care." *Vigilant*, 2017 WL 1682533, at *3.

MarineMax's motion in limine is not about a scratch or paint blemish, or whether a wine cooler is reading the correct temperature, or how a TV can be mounted. It is about allegations being made that require specialized knowledge concerning the manufacture, installation and design of boats such as the Azimut. LaBelle is not qualified to testify about a bow thruster, or black water pump, or trim tabs, and he cannot testify about whether such items are, in fact, "defects" or are the product of the ocean environment, or misuse, or lack of maintenance, or a variety of other issues which impact how these parts and systems interact with one another. He purchased a handmade vessel that went from a static environment to a dynamic ocean environment, and just because an item makes it on a punch list does not make it, in fact, a defect. Any testimony he gives concerning the presence of "defects" is mere conjecture based only on a lay understanding.

**MARINEMAX NORTHEAST, LLC,**

By its Attorneys,

| | |
|---|---|
| Dated: March 4, 2024 | */s/ Douglas B. Otto*<br>Douglas B. Otto (BBO#555269)<br>DARROWEVERETT LLP<br>50 Congress Street, Suite 1040<br>Boston, MA 02109<br>(617) 443-4500<br>dotto@darroweverett.com |

## **CERTIFICATE OF SERVICE**

    I, Douglas B. Otto, do hereby certify that a copy of the foregoing Trial Memorandum has been filed through the Court's CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic File (NEF) and paper copies will be sent by first class mail, postage prepaid, to those indicated as non-registered NEF participants.

| | |
|---|---|
| Dated: March 4, 2024 | */s/ Douglas B. Otto*<br>Douglas B. Otto |